UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATHEW F.,[1]

           Plaintiff,      Case # 20-CV-1197-FPG

v.                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## INTRODUCTION

On January 26, 2017, Plaintiff Mathew F. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning October 15, 2015, due to, *inter alia*, neck pain. Tr.[2] 221-23. After the Social Security Administration ("SSA") denied his claim, Tr. 111-16, Plaintiff appeared, with counsel, at a hearing on June 4, 2019, before Administrative Law Judge Paul Georger (the "ALJ"). Tr. 46-84. Plaintiff and a vocational expert testified. At the hearing, Plaintiff requested, on the advice of his counsel, to withdraw his SSI application and to amend his alleged onset date to July 2, 2016. Tr. 50-51. On September 4, 2019, the ALJ issued an unfavorable decision regarding Plaintiff's DIB claim and dismissed his SSI claim. Tr. 21-34. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff then appealed to this Court.[3] ECF No. 1.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 16, 19.  For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED., and the ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I.    District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.    Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative

substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2, 2016, the alleged onset date.  Tr. 23.  At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status post two surgeries; obesity; major depressive disorder; generalized anxiety disorder; and PTSD.  Tr. 23.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 24-25.  Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] except that he can never climb ladders, ropes or scaffolds; can never use ramps or stairs; can never balance; can occasionally stoop; can never kneel, crouch, or crawl; can perform simple, routine repetitive tasks; can make simple work-related decisions; can have occasional interaction with supervisors, co-workers, and the general public; and requires a sit/stand option to change positions every 45 minutes to one hour.  Tr. 25-33.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work.  Tr. 33.  At step five, the ALJ determined that there were jobs in the national economy that

---

[4] Sedentary work is defined in the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a)

Plaintiff could perform—such as an addresser, document preparer, and final assembler—and therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 33-34.

## II.     Analysis

Plaintiff argues that (1) the ALJ did not properly address the medical evidence and did not apply the treating physician rule to Plaintiff's treating sources, and (2) the ALJ improperly determined that Plaintiff did not meet the Listing requirements of 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.04(A).  ECF No. 16-1 at 15-21.  The Court disagrees.

### A.     The ALJ Properly Weighed the Opinion of Dr. Khare, Plaintiff's Treating Physician

First, Plaintiff argues that the ALJ improperly weighed the opinions from Plaintiff's treating pain management physician, Rahul Khare, M.D.  The Court disagrees.

Under the rules applicable at the time Plaintiff filed his claim, an ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons" for doing so.  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of

4

expertise; and (6) other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).

Here, on June 4, 2018, Dr. Khare opined that Plaintiff could occasionally lift and carry up to 50 pounds; could sit for only up to three hours in an eight-hour day and one hour at a time; could stand and walk for only up to two hours in an eight-hour workday and one hour at a time; could occasionally reach, handle, feel, push, pull, kneel, crouch, crawl, and climb ramps/stairs; but could never finger, operate a vehicle, prepare a simple meal, shop, or travel without assistance.   Tr. 1035-38.   The ALJ gave Dr. Khare's opinion "[p]artial weight" because Dr. Khare only treated Plaintiff for one year and only personally examined Plaintiff a handful of times.   Tr. 31.   Additionally, the ALJ discredited parts of Dr. Khare's opinion, noting that they were inconsistent with the record.   Tr. 31-32.   The ALJ credited the part of Dr. Khare's opinion that concluded that Plaintiff can stand or walk for a total of one hour at a time or two hours total because it was consistent with the record.   Tr. 31.   The Court concludes that the ALJ's reasons for only partially crediting Dr. Khare's opinion are sufficient.

Indeed, Dr. Khare only personally examined Plaintiff a few times in mid-2018, giving him only a brief snapshot into Plaintiff's health in a limited time period.   *See* Tr. 929-31 (September 2018 visit), 934 (June 2018 visit), 936-39 (May 2018 visit), 942-44 (April 27, 2018 visit), 945-46 (April 6, 2018 visit).   Still, as the ALJ acknowledged, parts of Dr. Khare's opinion—specifically those regarding his ability to sit for only up to three hours and his inability to use his hands and arms for reaching and pushing—are inconsistent with Dr. Khare's notes and the rest of the record.

Dr. Khare's notes are notable for what they are missing.   While recognizing that Plaintiff has chronic neck and cervical pain, the Dr. Khare's notes do *not* suggest that such pain means that Plaintiff cannot sit for more than three hours, as Dr. Khare opines.   In other words, there is nothing

in Dr. Khare's treatment notes tying the identified sitting limitation to his clinical findings.  Nor is there anything in Dr. Khare's treatment records even suggesting that Plaintiff can only occasionally use foot controls, can never stoop, use a telephone or computer, and cannot be exposed to environmental irritants and humidity.

Similarly, Dr. Khare's opinion that Plaintiff cannot shop or travel without assistance or prepare a simple meal, can never finger, and can only reach, feel, push, and pull occasionally is belied by the record.  Indeed, treatment notes from other providers detail Plaintiff's intact motor strength and finger dexterity and full grip strength, suggesting that he can use his hands and arms in ways Dr. Khare opined would be difficult or impossible for him.  Tr. 636, 639, 647, 675, 690, 928, 1111-12.  Likewise, Dr. Khare's opinion that Plaintiff could not prepare a simple meal or drive is directly contradicted by Plaintiff's testimony that he *could* prepare a simple meal, Tr. 285, and his statement that he could drive short distances, Tr. 1124.  The ALJ could reasonably rely on these discrepancies to discount those portions of Dr. Khare's opinion.

Plaintiff also quarrels with the ALJ's assignment of "little weight" an unsigned narrative report Plaintiff says was produced by Dr. Khare.  The Court agrees that it is likely that, given the placement of this report in the record, Dr. Khare produced the report.  Still, the Court is not persuaded that the ALJ's treatment of the report is not supported by substantial evidence.  The narrative, which is even more restrictive than Dr. Khare's June 2018 opinion, concludes that Plaintiff cannot "stand, walk or sit for any period longer than 1 hour without taking an extensive break lying down" and can never complete other activities "such as lifting, bending, reaching, fingering, climbing, pushing, pulling, handling."  Tr. 1043.  As the Court explained above, such restrictions are not supported by the record.

**B.     The ALJ Properly Weighed the Opinions of Janelle Hennard, Plaintiff's Treating Nurse Practitioner**

Plaintiff argues that the ALJ erred by affording only "partial weight" to opinions from Plaintiff's treating nurse practitioner, Janelle Hennard, PNP-BC.  The Court disagrees.

In October 2017, Hennard opined that Plaintiff was severely limited[5] in his ability to walk, stand, sit, lift, carry, push, pull, bend, squat, climb stairs, and use public transportation.  Tr. 784-85.  On February 23, 2018, Hennard issued a similar opinion, finding that Plaintiff could only occasionally lift and carry up to 60 pounds; sit and stand for one hour at time for up to two hours per day; would need to lay for the remainder of the day; could occasionally reach with the right hand and occasionally reach, handle, finger, and push with the left hand; could occasionally use foot controls; but could never climb ladders, balance, or stoop.  Tr. 683-86.  Hennard opined that Plaintiff could not prepare a simple meal and feed himself or handle paper files.  Tr. 688.

The ALJ gave these opinions "partial weight."  First, the ALJ correctly noted that, as a nurse practitioner, Hennard's opinion is not from an "acceptable" medical source as defined in 20 C.F.R. § 404.1513(a), the regulation applicable at the time the claim was filed.  However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as nurse practitioners, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."  SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).  Opinions from these sources are not considered "acceptable" and are therefore not entitled to controlling weight.  *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)).

---

[5] As defined in the opinion form, "severely limited" means that the individual is able to complete the function for one to two hours per day.

7

"However, the ALJ should consider information from 'other sources,' such as nurse practitioners, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work." *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)). Although the ALJ is "free to decide that the opinions from 'other sources' . . . are entitled to no or little weight, those decisions should be explained." *Piatt*, 80 F. Supp. 3d at 493 (quoting another source). Furthermore, an ALJ may not disregard a medical opinion solely because the opinion is from a nonacceptable medical source. *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335-36 (W.D.N.Y. 2018). Like for a treating physician, "[t]he amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Williams v. Colvin*, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

The ALJ properly applied this standard in evaluating Hennard's opinions and giving them "partial weight." The ALJ acknowledged that although the record reflects that Plaintiff would be limited in some of the ways described above, it does not support the *extent* of the limitations Hennard suggested. While recognizing that Hennard had a treatment relationship with Plaintiff, the ALJ noted that many of Hennard's opinions—although somewhat consistent with Dr. Khare's opinions—were not otherwise supported by her treatment notes or the record as a whole. The Court agrees that not all of Hennard's opinions are supported by the record.

For example, Hennard's treatment notes do not support her view that Plaintiff could not sit for more than one hour in a day. Her treatment records do not contain detailed musculoskeletal or neurological findings, nor do they note significant abnormalities, but they *do* note improvement in his pain. *See* Tr. 872-75. Although Hennard's opinion regarding lifting and carrying is consistent

with the record and Plaintiff's pain, her opinion that Plaintiff is unable to sit is inconsistent with findings throughout the record that Plaintiff had full upper extremity strength. Tr. 690, 787, 796, 800, 825, 839, 842, 853-54, 941, 946, 1062, 1082, 1102, 1111-12. For the same reasons the Court explained above, Hennard's opinion that Plaintiff could not feel, reach, push, pull, or operate foot controls is not supported by the record. Finally, Hennard's opinion that Plaintiff could not prepare a simple meal or feed himself is undercut by Plaintiff's own testimony.

For these reasons, the ALJ reasonably discounted some of the limitations Hennard identified while adopting others.

### C.      The ALJ Did Not Err in Weighing Other Medical Opinions

Plaintiff suggests, but does not explicitly argue, that the ALJ also erred in weighing the other medical records in the record. Again, the Court disagrees.

Although an ALJ is required to consider all medical opinion in the record, "[i]t is well-settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety." *My-Lein L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00446 EAW, 2021 WL 3266230, at *3 (W.D.N.Y. July 30, 2021); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *William M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1665-DB, 2021 WL 3077885, at *4 (W.D.N.Y. July 21, 2021) (explaining that determination of the RFC is not a medical determination but an administrative finding which is reserved to the Commissioner, and "the ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision, because the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole" (alterations, citations, and quotations omitted)).

Here, the ALJ *did* consider all of the medical opinions in the record,[6] giving each of them "partial weight."  As his decision makes clear, the ALJ balanced medical opinions that were more restrictive with opinions that were less restrictive, arriving at somewhat of a middle ground, as is his prerogative.  *See My-Lein*, 2021 WL 3266230, at *3 ("[A]n ALJ is tasked with weighing all of the evidence available to make an RFC that is consistent with the record as a whole.").  *Compare* Tr. 30 (giving partial weight to the opinion from consultative evaluator Dr. David Brauer that Plaintiff had *no* limitation in ability to stand, walk, or climb stairs, because the record demonstrated that Plaintiff was more limited), *and* Tr. 32 (giving partial weight to the opinion from state examiner G. Feldman, M.D., who opined that Plaintiff could perform the full range of light work, because the ALJ found that Plaintiff was limited to sedentary work with additional limitations), *with* Tr. 31 (giving partial weight to Hennard's and Dr. Khare's opinions, *inter alia*, that Plaintiff could only stand or sit for at most two hours, because the record did not support such significant limitations).    The Court finds no error in the ALJ's handling of the medical opinions.

### D.   The ALJ Properly Concluded that Plaintiff's Cervical Spine Impairment Did Not Meet or Medically Equal Listing 1.04A

Plaintiff next argues that the ALJ "fail[ed] to address" whether Plaintiff's cervical spine impairment met or medically equaled Listing 1.04A.  ECF No. 16-1 at 21.

To meet Listing 1.04(A), a claimant must show:

1.  A disorder of the spine, including but not limited to herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, and
2. Compromise of nerve root (including the cauda equina) or the spinal cord, and

---

[6] Plaintiff insists that the ALJ failed to mention opinions from Plaintiff's treating orthopedic specialists, Drs. Ross Sherban and Rodrigo Castro.  ECF No. 16-1 at 19.  The records Plaintiff cites, Tr. 898-903, are treatment records, not medical opinions.  To the extent they contain any opinion—*i.e.*, that Plaintiff is 100% disabled—such an opinion reaches the ultimate issue reserved to the Commissioner.  *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 75 (2d Cir. 2018) (summary order) ("A bald statement that a claimant is 'disabled' represents an administrative finding, not a medical opinion."); *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999).

3. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), and
4. Sensory or reflex loss, and if there is involvement of the lower back,
5. Positive straight-leg raising test in both the sitting and supine position.

*Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019) (quoting other sources).  Plaintiff contends that he has met this burden.  The Court disagrees.

As the ALJ correctly concluded, the record is devoid of evidence of nerve root damage with the required characteristics.  To be sure, the record demonstrates that Plaintiff has two herniated discs, Tr. 1074-76, "mild" encroachment on the spinal cord, Tr. 804, and a decreased range of motion, Tr. 755.  But these facts do *not* establish compromise of the nerve root, and nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the *spine*, and motor loss, as required in the Listing.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, ECF No. 16, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 19, is GRANTED, and the ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 24, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York